**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REFAEL AHARON, as an Individual and as Guardian on Behalf of O.A. and I.A., Minor Children,<br><br>Plaintiffs,<br><br>v.<br><br>SUSANY BABU, SONU ABRAHAM, YVONNE WHEELER, and WILLIAM GILL,<br><br>Defendants. | No. 22 C 04502<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

In this diversity action, *pro se* Plaintiffs Refael Aharon ("Aharon") and his minor children, O.A., and I.A. (collectively, "Plaintiffs") sued their landlords, Susany Babu and Sonu Abraham, and their real estate agents, Yvonne Wheeler and William Gill (collectively, "Defendants").[1] The basis of Plaintiffs' nine-count Complaint is that their rental house caused them to suffer problems from undisclosed radon, mold, lead, fungus, bacteria, and unclean water. Defendants Wheeler and Gill filed a motion to dismiss (R. 13), as did Defendants Babu and Abraham (R. 26). For the following reasons, the Court grants Wheeler and Gill's motion in full, and denies Babu and Abraham's motion in part and grants it in part.

---

[1] Plaintiffs' Complaint incorrectly names Defendant Yvonne Wheeler as "Yvonne Wheeler/Northcutt" and Defendant William Gill as "William Bill." Both Defendants acknowledge the Complaint is directed toward them and informs the Court as to their correct identity.

1

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## BACKGROUND

Defendants Babu and Abraham purchased a house at 28W775 Grommon Road, Naperville, Illinois (the "Property") in 2018. They lived there for two years before attempting to list it for sale or rent. *Id.* ¶ 9. Babu, who was also a licensed real estate

agent, published information online about the Property through Kale Realty and Chicagoland Brokers. *Id.* ¶¶ 9, 11.

In May 2021, Aharon decided to relocate his two minor children and dog from California to Naperville, Illinois. R. 8 ¶ 16. Aharon's business partner introduced him to Wheeler, a real estate agent with Baird and Warner. Wheeler suggested that Aharon consider the Property, and directed him to review information Babu had posted online. *Id.* ¶ 17. Wheeler then showed Aharon the property via Zoom, discussed the Property over the phone and via text messages, and introduced Aharon to Babu and Abraham. *Id.* ¶¶ 9, 18.

"[A]t the request of Defendants, Babu and Abraham[,] and at the insistence of Defendant Wheeler," Aharon executed a 13.5 month lease for the Property on May 12, 2021. *Id.* ¶ 21. Aharon agreed to pay rent of $2,800 per month, which included all utilities except water because the Property contained a private well. *Id.* ¶¶ 10, 23. The lease contained a blank radon disclosure form. *Id.* ¶ 23; *id.* Ex. 5. Plaintiffs allege that all Defendants signed the lease, but the copy attached to the Complaint shows that only Babu and Abraham, the landlords, signed the lease. *Id.* Ex. 4. Plaintiffs could not move in until June 11, 2021. *Id.* ¶ 24. From the signing of the lease up to that date, Babu and Abraham continued to enter the home to perform maintenance work. *Id.* Babu and Abraham texted Aharon on June 10, 2021 to inform him that the water at the Property had an odor, was discolored, and contained sedimentation, but that Babu and Abraham had previously lived at the Property and that it was safe for

consumption.[2] *Id.* ¶¶ 26-29. They also allegedly claimed the basement where O.A. was to sleep was safe. *Id.* ¶ 27. Upon arrival, Plaintiffs discovered the Property "was not ready for move in," despite the lease officially beginning a month earlier. *Id.* ¶ 24.

Based on Babu and Abraham's assertions that the water was safe, Plaintiffs and their dog used the indoor and outdoor water taps for normal use, including bathing, drinking, and cooking. *Id.* ¶¶ 28, 61. They allege that, immediately after moving into the Property, Plaintiffs and their dog began experiencing health problems like bacterial and fungal infections, unexplained skin wounds, fatigue, brain fog, respiratory illnesses, coughing and sneezing, mouth ulcers, and insomnia. *Id.* ¶¶ 42, 63-65. They also noticed a sewage-like odor throughout the Property and that the water was corroding regular household items. *Id.*

Aharon began suspecting that the Property's water and air quality was the root of their issues and requested that Babu and Abraham disclose past inspection and lab reports regarding the water and air quality at the Property. *Id.* ¶¶ 42-43. Babu and Abraham admitted they had past test results but refused to disclose them, assuring Aharon that the water was safe, and Abraham told Aharon to perform his own tests. *Id.* ¶¶ 43-44. Aharon did so through "certified inspectors and labs." *Id.* ¶ 45. The results of the independent tests, attached to the Complaint, revealed that the water had "toxic levels of lead, fungus and bacterial contaminations and had elevated levels of salts," which is detrimental to short- and long-term health. *Id.* ¶¶ 46-47, 69-

---

[2] The Complaint includes Wheeler in these allegations, but the exhibits attached to the Complaint which contain the alleged text messages show that Aharon communicated only with Susany Babu and Sonu Abraham. *Id.* Exs. 6 and 7.

74. Lab results further revealed high levels of radon and mold in the basement at levels that pose a health risk and require mediation under the law. *Id.* ¶¶ 48-49, 68-74.

Plaintiffs visited several doctors for their issues, had blood work done revealing high levels of lead in their blood, and had to take antibiotics and medications. *Id.* ¶ 50. Plaintiffs' dog suffered from "contaminants," as confirmed by a veterinarian, and was prescribed antibiotics. *Id.* Plaintiffs resorted to using bottled water for daily use, "avoided using the bathroom," and took showers at the local YMCA. *Id.* ¶¶ 51-52. Aharon sent a letter to Defendants on August 20, 2021 detailing the results of his private tests, and filed a complaint with the Will County Health Department. *Id.* ¶¶ 53-54. Plaintiffs further allege that Aharon informed Babu and Abraham of the toxic air and water quality multiple times from July to October 2021, which they ignored. *Id.* ¶ 55. When Plaintiffs informed Wheeler of the issues, she "initially ignored them and acted shocked," but thereafter suggested they not pay rent and contact a lawyer. *Id.* ¶ 31. Plaintiffs allege that Defendants knew about the defects and hazards at the Property because: (a) they are "senior scientists, realtors, and environmental educators;" (b) Babu and Abraham previously lived at the Property and moved out because of the issues; (c) they failed to sell the Property presumably because of issues uncovered during inspections; and (d) a prior tenant complained about the issues and terminated the lease early. *Id.* ¶¶ 14-15, 60-61.

Plaintiffs further allege that Babu and Abraham entered the Property almost every day during the first month Plaintiffs lived at the Property without making

repairs and ignored requests to make repairs. *Id.* ¶ 30. On June 26, 2021, Babu, Abraham, and Babu's sister entered the Property without permission. *Id.* ¶ 32. On July 2, 2021, "Defendants Babu and Abraham entered the property and advised the Plaintiffs they were prohibited from eating from the vegetable garden as well as the fruit from the trees in the backyard because [they] belonged solely to the Defendants." *Id.* ¶ 33. And on September 27, 2021, Abraham allegedly "violently trespassed on [the Property], physically and verbally assaulted the Plaintiffs by pushing the front door to the house and Plaintiff Dr. Aharon himself, spoke violently to Plaintiff O.A. (a minor female) and blocking [sic] the driveway for hours, without notice, consent, or permission of the Plaintiffs." *Id.* ¶ 58.

Plaintiffs vacated the Property in October 2021 because they allege they were "constructively evicted" by the risks to their health and safety posed by the lead, contaminants, mold, and radon. *Id.* ¶¶ 55-56. They left the house vacant, clean, and fully paid, including an additional month of rent. *Id.* ¶ 66. They allege they are still suffering adverse health effects from their time living in the Property. *Id.* ¶¶ 63-34.

On August 24, 2022, Plaintiffs, who had since moved to Michigan, filed a nine count Complaint in this Court under its diversity jurisdiction against Wheeler, Gill (Wheeler's managing broker at Baird & Warner), Abraham, and Babu. They make the following claims against all Defendants: breach of contract (Count I), negligence and negligence per se (Count II), trespass (Count III), violations of the implied warranty of habitability (Count IV), violations of the Illinois Consumer Protection Act (Count V), failure to warn of latent defects (Count VI), "Damages to Property (Family

Dog)" (Count VII), Promissory Estoppel (Count VIII), and Fraudulent Concealment (Count IX). They seek compensatory damages, including out of pocket losses from rent, lab tests, bottled water, relocation expenses, loss of income, past and future pain and suffering, damages to their dog, and veterinary and medical bills, as well as punitive damages and attorneys' fees and costs. *See, e.g.*, *id.* ¶¶ 106-17.

## DISCUSSION

First, Defendants argue that Plaintiffs' Complaint should be dismissed because it is rife with pleading errors, such as improper incorporation by reference,[3] lack of specificity, and improper and confusing group references to "Defendants" in general when Plaintiffs were clearly referring to a specific Defendant or subset of Defendants.[4] However true, the Court holds a *pro se* complaint "to less stringent

---

[3] Plaintiffs incorporated all prior paragraphs by reference in Counts II, IV, V, and VI. Defendants allege that this style of "shotgun" pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *CustomGuide v. CareerBuilder*, LLC, 813 F. Supp. 2d 990, 1001-02 (N.D. Ill. 2011) (quoting *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 650 n. 22 (11th Cir. 2010)).

[4] This almost exclusively occurred when Plaintiffs meant to refer to the landlord Defendants, Babu and Abraham, but instead referred to an unspecified "Defendant" or "Defendants" as a whole. Examples pointed to by Defendants include: "defendants only did cheap cosmetic work and ignored the severe health related faults" (R. 8 ¶ 25); "Defendants misrepresented and failed to disclose the true condition of Grommon Road ..." (*id.* ¶ 75); "Defendants failed to lawfully hand over possession of Grommon Road and continued to enter the property for a full month after the lease was signed" (*id.* ¶ 78); "Defendant entered the house and made unpleasant remarks regarding the odor and our private smell. She entered without notice…" (*id.* ¶ 118); "Defendants violated the law by hiding prior results, making false publication and misrepresentations" (*id.* ¶ 131); "Defendants aforesaid conduct…" (*id.* ¶ 110); "Defendants intentionally waited" until after Aharon signed the lease to mention that the well had not been properly maintained and "there was a problem with the water quality" (*id.* ¶ 164).

standards than formal pleadings drafted by lawyers," and construes it "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Therefore, the Court will give Plaintiffs' Complaint its most natural reading. For example, where Plaintiffs' references to "Defendants" are clearly referring to Abraham and Babu, the Court will assume Plaintiffs intended to only refer to Abraham and Babu. With these standards in mind, the Court examines the sufficiency of each claim in the Complaint.

## I. Counts I and IV: Breach of Contract and Breach of the Implied Warranty of Habitability

In Count I, Plaintiffs allege breaches of contract against all Defendants arising out of their alleged refusal to make repairs, maintain the plumbing and private well, and lawfully hand over possession, and their breaches of the implied covenants of peaceful enjoyment and habitability. *Id.* ¶¶ 75-82. And in Count IV, Plaintiffs allege a separate count of breach of the implied warranty of habitability. The claims against Wheeler and Gill are dismissed, but the claims against Babu and Abraham survive the motion to dismiss.

### A. Against Wheeler and Gill

First, the breach of contract claim against Wheeler and Gill must be dismissed because no contract exists between them and Aharon. Although Plaintiffs allege that Wheeler and Gill were parties to the lease and "dual agents" (i.e., represented both sides of the transaction) who breached a fiduciary duty, this is contradicted by the terms of the lease itself, which is attached to the Complaint. The lease clearly states that it is between Aharon as tenant and Abraham and Babu as landlords. Wheeler is

8

listed only as Aharon's own real estate agent and Gill is listed as Wheeler's "Managing Broker." *Id.* Ex. 4 at 5. Neither of them signed the lease. *Id.* The lease expressly disclaims that they were acting as "dual agents" and states they only represented Aharon. *Id.* Ex. 4 at 3, ¶ 21. Where, like here, the allegations of the Complaint contradict an exhibit, the exhibit controls. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *see also N. Am. Elite Ins. Co. v. Menard Inc.*, 491 F. Supp. 3d 333, 338 (N.D. Ill. 2020), *aff'd*, 43 F.4th 691 (7th Cir. 2022) ("The Court is not bound by a plaintiff's characterization of an exhibit and may independently examine the document to form its own conclusions."). Further, to the extent that Plaintiffs allege breach of a fiduciary duty claim against Wheeler and Gill in this Count, the Illinois Real Estate License Act specifically abolished any fiduciary duties owed by real estate brokers. 225 ILCS 454/15-5.

As to breaches of the implied warranty of habitability and covenant of peaceful enjoyment, these are actions arising out of a valid contract. *Sienna Count Condo. Assn. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119–21 (Ill. 2018) (purchaser of house cannot allege breach of implied warranty of habitability claim against party with whom there is no contractual relationship). Because there is no contractual relationship between Aharon and Wheeler and Gill, Plaintiffs cannot claim breaches of the implied warranty of habitability and covenant of peaceful enjoyment against them. Therefore, the motion to dismiss Counts I and IV as to Wheeler and Gill is granted.

### B. Against Babu/Abraham

Defendants Babu and Abraham, parties to the lease agreement with Aharon, argue that the breach of contract and implied warranty of habitability claims against them should be dismissed because the Complaint fails to identify what provisions of the lease they breached and who breached them. *See CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 996 (N.D. Ill. 2011). But Plaintiffs' *pro se* pleadings are adequate to state cognizable claims for breach of contract and breaches of the implied warranties.

The implied warranty of habitability, which inheres in all leases and requires "that a dwelling be fit for its intended use; that is, it should be habitable and fit for living." *Glasoe v. Trinkle*, 107 Ill. 2d 1, 13 (1985) (citations omitted). From the beginning of the lease, the implied warranty promises that there are "no latent defects in those facilities vital to the use of the dwelling for residential purposes and vital to the life, health and safety of the tenant . . . ." *Id.* Although a landlord is not required to ensure a property is in "perfect or aesthetically pleasing condition," there cannot be substantial defects which would render the property "unsafe or unsanitary." *Id.* Here, Plaintiffs state that, from the beginning of the lease, the Property's water contained toxic levels of lead, bacteria, and fungus, and the air in the house contained unsafe levels of radon and mold. Though Babu and Abraham argue that there is no requirement under the law that they mitigate radon, housing codes and laws do not control the scope of the implied warranty of habitability. *See Glasoe*, 107 Ill.2d at 12 ("the absence of a . . . housing or building code . . . does not preclude the application of the implied warranty of habitability to the property in

question"). Taken together in the light most favorable to the Plaintiffs, the conditions alleged, which are not merely surface-level aesthetic complaints, posed a significant risk to Plaintiffs' health and safety and made the Property unfit for living.

Further, based on a liberal reading of the Complaint, Plaintiffs allege Babu and Abraham, as landlords, breached the lease provision related to tendering possession of the Property. R. 8, Ex. 4 at 2, ¶ 5 ("Landlord will tender possession of Premises not later than the beginning date of this lease"). Specifically, Plaintiffs describe that Babu and Abraham continually entered the Property after the commencement of the lease, and the Property still was not ready for move-in when they arrived a month after the lease was executed. They also allege breaches of the "Right of Entry" provision (*id.* Ex. 4 at 3, ¶ 14 ("Landlord or Landlord's agents will have the right to enter the Premises at reasonable times with reasonable notice")), because Babu and Abraham allegedly entered the Property numerous times without notice, and on one occasion, Abraham physically pushed the door open and pushed Aharon. Babu and Abraham point to the lease addendum which gave them the right to enter the Property to tend the garden; however, whether they were entering for this purpose is an evidentiary question for the finder of fact.[5] Plaintiffs additionally adequately claim Babu and Abraham failed to make basic structural repairs to the plumbing, well, media room, and stairs, and removal of toxins in the air and water as required by the lease. *Id.* ¶¶ 78–80; *id.* Ex. 4 at 2, ¶ 8 ("Landlord will be responsible

---

[5] For this same reason, Babu and Abraham's motion as to Count III, trespass, is denied. See Section III, *infra.*

for any structural or major maintenance and repairs . . . Landlord shall discharge its maintenance and repair responsibilities in a timely manner."). Though Plaintiffs contend that Defendants breached the lease by failing to disclose known defects with the Property, that is not a contractual claim, but rather, one based on fraud or negligence. *Wanland v. Beavers*, 130 Ill. App. 3d 731, 733 (1985). And indeed, the Complaint makes separate negligence- and fraud-based claims in Counts II, V, VI, and IX related to their failure to disclose the defects.

In Count I, Plaintiffs also explicitly allege breach of the implied covenant of peaceful enjoyment. This covenant, implied in all leases, "is breached when there is actual or constructive eviction of the lessee by the lessor of the property." *Midway Park Saver v. Sarco Putty Co.*, 976 N.E.2d 1063, 1073 (Ill. App. Ct. 2012). Plaintiffs argue they were constructively evicted from the Property due to Babu and Abraham's failure to remedy the risks to their family's health and safety. And indeed, a failure by a landlord to make repairs that causes a property to be "unfit for the purpose for which [it was] leased" can constitute constructive eviction. *Shaker and Assocs., Inc. v. Med. Techs. Grp., Ltd.*, 315 Ill. App. 3d 126, 135 (2000) (citing *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 148 (1988)). Plaintiffs have thus adequately alleged breach of contract and breach of the implied warranty of habitability in Counts I and IV against Defendants Babu and Abraham.

## II.     Count II: Negligence and Negligence Per Se

In Count II, Plaintiffs plead negligence and negligence per se against Defendants.

### A. Negligence Per Se

First, Plaintiffs' negligence per se claim against all Defendants must be dismissed. To state a claim based on negligence per se, Plaintiffs must allege "the violation of a statute designed to protect human life," and that they were of the class the statute was designed to protect. *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 59 (1999). Where properly pleaded, negligence per se creates a conclusive presumption of duty and breach.[6] *Id.* Because negligence per se imposes strict liability, it must be clear from the face of the statute that the legislature intended to impose such liability for a violation. *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 394-95 (1999).

Plaintiffs here fail to reference any statute which would form the basis of their negligence per se claim. They merely state that Defendants breached their duties "to comply with all applicable state and federal statutes, laws, regulations, and safety codes intended to ensure the safety of [the Property]." R. 8 ¶ 100. Even under the most liberal pleading standards, this is not enough. Without a citation to a specific statute, the Court cannot determine whether the statute was intended to protect people like Plaintiffs and whether the legislature clearly intended to impose such strict liability. *Roberson v. Novartis Pharms. Corp.*, 2011 WL 1740137, at *2 (N.D. Ill.

---

[6] Defendants argue that Plaintiffs must replead because they are not allowed to combine two legal claims in one count. *See Savin v. Robinson*, 2001 WL 1191192, at *2 (N.D. Ill. Oct. 4, 2001). As explained previously, however, the Court will not hold Plaintiffs to the pleading standards expected of lawyers. And even so, plaintiffs are not required to plead in the form of counts. Further, negligence per se is not necessarily a separate claim, as it merely creates a presumption of duty and breach.

May 5, 2011) (dismissing negligence per se claim because the Plaintiff "failed to identify a specific statute in the complaint that [the defendant] allegedly violated."). Plaintiffs' negligence per se claim against all Defendants is therefore dismissed and all references to negligence per se in Count II are stricken (*i.e.*, the section title and the reference in ¶ 103).

### B. Negligence

#### i. Against Wheeler/Gill

Plaintiffs allege Wheeler and Gill were negligent in failing to verify the "publication is correct and about the house history" and in failing to disclose the hazardous conditions at the Property. R. 8 ¶¶ 95, 101. Under the Illinois Real Estate License Act (the "Act"), real estate brokers have a duty to disclose only those latent material defects of which they are aware to customers.[7] 225 ILCS 454/15-25; *Zimmerman v. Northfield Real Est., Inc.*, 156 Ill. App. 3d 154, 162 (1986) (sellers' agents have a duty to disclose since they "occupy a position of trust with respect to purchasers with whom they are negotiating"). Violations of the Act may be the basis for negligent misrepresentation claims. *Richmond v. Blair*, 142 Ill. App. 3d 251, 256 (1985). But the Act protects real estate licensees when they make false statements if

---

[7] The Act specifically states that real estate "[l]icensees shall treat all customers honestly and shall not negligently or knowingly give them false information." 225 ILCS 454/15-25. The Act defines a "customer" to mean someone "who is not being represented by the licensee but for whom the licensee is performing ministerial acts," or those acts which "do not rise to the level of active representation," such as attending an open house. *Id.* § 1-10. This section, therefore, likely does not apply to the relationship between Aharon and Wheeler, who represented him as his agent. But assuming it does, the Court still does not find that Wheeler and Gill had a duty to inform Aharon of the defects.

14

the false information was provided by the property owner and the broker had no reason to believe the information was incorrect. 225 ILCS 454/15-25.

Plaintiffs do not specify which publication Wheeler and Gill allegedly had the duty to verify, but the court will assume they are referring to the publication Aharon viewed online about the Property. But according to the Complaint and the exhibits attached to the Complaint, neither Wheeler nor Gill were listing agents of the Property. In fact, Babu and a person by the name of "Richmond" were named as the listing agents of the Property in an online publication. R. 8 Ex. 2. Plaintiffs plead no facts that Wheeler and Gill were responsible for the information in any of the online listings or would have had any knowledge that the information in the listings was false. They thus had no duty to assure its truth.

Similarly, Plaintiffs cannot maintain that Wheeler and Gill had a duty to disclose the hazardous conditions at the Property because Plaintiffs did not adequately allege that they had any knowledge of the latent defects or hazardous conditions. The Complaint states that "Defendants had actual or constructive knowledge of the hazardous conditions and a reasonable opportunity to remedy those conditions," but also describes that Wheeler acted "shocked" when Aharon told her about the issues. R. 8 ¶ 31. A conclusory allegation that Wheeler and Gill had constructive knowledge of the defects is not enough.[8] *See Biggers Holdings LLC v. Garcia*, 2022 WL 3107617, at *7-8 (N.D. Ill. Aug. 4, 2022) (negligent

---

[8] And, as his real estate agents, they would not have had any duty to remedy the defects if they knew about them. It seems this allegation is properly aimed at Babu and Abraham.

misrepresentation claim against real estate broker dismissed because plaintiff did not plausibly allege that the broker knew that any statements about the property were false); *Harkala v. Wildwood Realty, Inc.*, 200 Ill. App. 3d 447, 455 (1990) (affirming summary judgment in favor of real estate brokers who had no duty to investigate home for concealed defects). Plaintiffs also do not allege that Wheeler and Gill made any specific misrepresentations about the Property, other than referring Aharon to Babu's online listing and doing a virtual walk-through of the Property over Zoom.

The cases cited by Plaintiffs are distinguishable. Two involved a broker either making affirmative factual misrepresentations or concealing material information of which they had knowledge to a buyer, neither of which Plaintiffs allege occurred here. *Zimmerman*, 156 Ill. App. 3d at 162 (sellers' agents "had a duty to speak regarding material information of which they had knowledge"); *Richmond*, 142 Ill. App. 3d at 256 (plaintiff alleged negligent misrepresentation claim against broker who wrongfully assured plaintiff there were no water issues with a home without knowledge of the truth of the statement). And in *Buzzard v. Bolger*, the court held that the plaintiff had not alleged a claim of negligent misrepresentation because the statements made by the broker were statements of opinion, not fact. 117 Ill. App. 3d 887, 891 (1983). Therefore, Count II against Wheeler and Gill is dismissed.

### ii. Against Babu/Abraham

Plaintiffs allege that Babu and Abraham were negligent in failing to maintain the Property, failing to disclose the defects, and negligently misrepresenting that the

16

water was safe for consumption. Babu and Abraham argue that the negligence claim against them should be dismissed because the lease provides that Babu and Abraham are not liable to Aharon "for any damage to [his] person or property . . . other than for [their] gross negligence." R. 8 Ex. 4 at 3 ¶13. Gross negligence is something more than negligence and less than recklessness. *See F.D.I.C. v. Giannoulias*, 918 F. Supp. 2d 768, 771-72 (N.D. Ill. 2013) (discussing definition of gross negligence under Illinois law). Similar "partial" exculpatory clauses, like the one in the lease, have been read by courts to disclaim only "ordinary negligence committed in good faith," while still allowing liability for "actions taken in bad faith, *i.e.*, constituting 'willful misconduct or gross negligence.'" *Home Healthcare of Ill., Inc. v. Jesk*, 112 N.E.3d 594, 603-04 (Ill. App. Ct. 2017). True, the Complaint does not explicitly acknowledge this heightened standard, but the allegations of Babu and Abraham's knowing misrepresentations and failure to maintain the property, taken in the light most favorable to Plaintiffs, plausibly reach this standard.

Babu and Abraham further argue that they cannot be held to have a duty to disclose the alleged latent defects of the Property because Plaintiffs did not adequately allege that they had knowledge of them, and the exhibits to the Complaint refute Plaintiffs' claims. To the contrary, the Court can plausibly infer Babu's and Abraham's knowledge from Plaintiffs' allegations.[9] Plaintiffs point to the following

---

[9] As previously discussed, Babu, a real estate agent and broker, had a duty to disclose all latent defects of which she had actual or constructive knowledge. 225 ILCS 454/15-25; *Zimmerman*, 156 Ill. App. 3d at 162. Landlords also have a duty to disclose known radon test results to lessees (but do not have a duty to conduct testing in the first place). *See* 420 ILCS 46/25.

facts: that Babu and Abraham lived in the home for two years; that there were unused construction materials in the garage indicating an intent to fix the hazards at one time; that their prior attempts to sell the Property would have included inspections necessitating tests of the water and air; that a prior tenant moved out after only nine months and complained about the defects; that they acknowledged they had prior test results and refused to provide them; and that Babu and Abraham provided bottled water to Plaintiffs upon move-in, while acknowledging the water smelled and was discolored.

As to Babu and Abraham's argument that the exhibits to the Complaint refute Plaintiffs' claims that they had any knowledge, this is improperly asking the Court to make evidentiary findings. *See* R. 8 Exs. 6-8 (showing text messages from Babu and Abraham stating that the water was safe). Plaintiffs have plausibly alleged those texts contain knowing or at least grossly negligent misrepresentations. It is up to a finder of fact to decide who to believe. Therefore, Babu and Abraham's motion to dismiss Count II against them is granted to the extent that Count II alleges negligence per se and ordinary negligence but is otherwise denied as to gross negligence.

## III.   Count III: Trespass to Personal Space

In Count III, Plaintiffs allege "trespass to personal space" against Defendants Abraham and Babu.[10] A person commits trespass by "entering onto a person's land

---

[10] The Complaint does not explicitly specify which "Defendant" or "Defendants" committed the acts in Count III, however, in Plaintiffs' response brief to Wheeler and Gill's motion to dismiss, Plaintiffs clarify that this Count is meant to be pleaded

without permission, invitation, or other right." *Schweihs v. Chase Home Fin. LLC*, 187 N.E.3d 1196, 1207 (Ill. App. Ct. 2021), *appeal denied*, 183 N.E.3d 911 (Ill. 2021). That the entry was permitted by the terms of a valid contract is a defense to an action for trespass. *Id.* Babu and Abraham allege that the lease gave them the right to access the property and that they did so for purposes permitted by the lease. It is true that the lease gave them right of entry in certain circumstances and for certain purposes. However, courts should "refrain from granting Rule 12(b)(6) motions on affirmative defenses." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). This is because affirmative defenses "typically turn on facts not before the court at [this] stage in the proceedings." *Id.* And here, whether Babu and Abraham entered for the permitted purposes is a factual question. Taking the Complaint as true, Plaintiffs allege that Babu, Abraham, and Babu's sister entered the Property without notice (which is required by the lease) for purposes outside the scope of lease (i.e., not for tending the garden or making repairs), at one point forcibly entered and assaulted Aharon and O.A., and blocked access to their driveway and garage. The motion to dismiss Count III against Babu and Abraham is denied.

## IV.   Counts V, VI and IX: Illinois Consumer Fraud Act, Failure to Warn of Latent Defects, and Fraudulent Concealment

---

against Babu and Abraham only. Wheeler and Gill's motion to dismiss this Count, therefore, is moot.

Count V alleges violations of the Illinois Consumer Fraud Act ("ICFA"); Count VI alleges that Defendants failed to warn Plaintiffs of latent defects; and Count IX alleges fraudulent concealment.

## A. As to Wheeler/Gill

Counts V, VI, and IX against Wheeler and Gill can be dismissed for the reasons described in the Court's discussion on negligence, Section II.B.i, *supra*. Namely, if Plaintiffs could not state a negligence claim against Wheeler and Gill for their alleged failure to warn about the latent defects, then Plaintiffs surely cannot make out an ICFA claim, an independent failure to warn claim, or any fraudulent concealment claim (which has a higher pleading standard). Indeed, Plaintiffs do not allege that Wheeler and Gill even had knowledge of any of the hazardous conditions. This is a prerequisite to imposing any duty to warn on a real estate broker. 225 ILCS 454/15-25. Therefore, Counts V, VI, and IX against Wheeler and Gill are dismissed.

## B. Against Babu/Abraham

Babu and Abraham argue Counts V, VI, and IX against them should be dismissed for failure to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements for fraud. A party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). To meet the particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011) (citation omitted).

20

Rule 9(b)'s requirements, however, are generally relaxed when the plaintiff is *pro se. Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). But, more fundamentally, the Rule 9(b) pleading standard does not apply to Count V, the ICFA claim, which only requires that the defendant commit a deceptive practice or act with the intent that the plaintiff rely on the deception. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) ("Rule 9(b)'s heightened pleading standard does not apply" to ICFA claims); *Mighty v. Safeguard Properties Mgmt., LLC*, 2018 WL 5619451, at *9 (N.D. Ill. 2018). Babu and Abraham do not otherwise argue that Plaintiffs have failed to allege the elements of an ICFA claim, so their motion as to Count V is denied.

As to Plaintiffs' fraud-based claims in Counts VI and IX, Illinois courts have held that landlords can be liable for "latent defects existing at the time the premises were leased [and] fraudulent concealment of a known dangerous condition." *Housh v. Swanson*, 203 Ill. App. 3d 377, 383 (1990) (quoting *McCombs v. Dexter*, 186 Ill. App. 3d 484, 486 (1989)). As previously discussed in the Court's analysis of Plaintiffs' negligence claim, Plaintiffs have adequately alleged that Babu and Abraham told them the water and air in the Property were safe when they knew it was not and further failed to disclose prior test results and defects of which they were aware. Even if Plaintiffs do not specifically point to fraudulent representations (which Plaintiffs do—by even attaching those communications to the Complaint, *see* R. 8 Exs. 6-8), fraudulent concealment, by its terms, does not require that plaintiffs point to specific

misrepresentations—it is rather the absence of representations in the face of a duty to speak that gives rise to the claim.

The Court will also deny Defendants' request to strike Count IX (fraudulent concealment) as redundant because it and Count VI (failure to warn of latent defects), are labeled differently, contain different supporting facts, and Illinois has recognized them as separate causes of action. *See Housh*, 203 Ill. App. at 383 (discussing causes of action available against landlords, including liability for latent defects and fraudulent concealment of a known dangerous condition). If Defendants are found liable, Plaintiffs will receive only one recovery for their damages, regardless of the number of claims in their Complaint. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 992 (N.D. Ill. 2020) ("Plaintiffs can pursue different causes of action based on the same set of facts, though they can recover only once for the injury." (internal citations omitted)). Therefore, the motion to dismiss Counts VI and IX against Babu and Abraham is also denied.

## V.    Count VII: "Damages to Property (Family Dog)"

Count VII, "Damages to Property (Family Dog)," must be dismissed against all Defendants. In Illinois, a dog is considered personal property and an injury to the dog is a part of compensatory damages. *Leith v. Frost*, 387 Ill. App. 3d 430, 436 (2008). Plaintiffs are correct that an injury to a dog is calculated by the actual value of the animal to the Plaintiffs (*id.*), however, there is no separate cause of action for damages when those damages are requested in other Counts. *See Benson v. Abbott*, 326 Ill. App. 3d 599, 600-01 (2001) (property damage was not separate cause of

action); *Waggener v. Macoupin Cnty., Ill.*, 2009 WL 1308919, at *1 (C.D. Ill. May 8, 2009) (striking punitive damages claim when such damages requested in other prayers for relief). Rather, Plaintiffs already have requested compensation for the injuries to their dog in their other Counts. See R. 8 ¶¶ 34, 50, 88, 111, 113, 140, 156, 158, 175, 177, 192, 193, 209. Defendants' motions to dismiss Count VII are granted.

## VI.    Count VIII: Promissory Estoppel

Plaintiffs' promissory estoppel claim in Count VIII also fails to state a claim against all Defendants. Promissory estoppel is a quasi-contractual claim where "all the other elements of a contract exist, but consideration is lacking." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (citation omitted). To state a claim for promissory estoppel, the plaintiff must allege that the "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Id.* (citation omitted). "Promissory estoppel is usually based on a promise of future action, not a representation of fact." *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 824 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) (citation omitted).

The promises on which Plaintiffs base this claim ("that the property would be habitable and safe") are not the type of promises on which a promissory estoppel claim can be made. First, Plaintiffs plead no facts which tie these promises to Wheeler or

Gill.[11] And second, these are merely promises of an existing fact, not of future action. *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 680 (N.D. Ill. 2005) ("A promise for purposes of promissory estoppel typically involves 'a declaration that one will do or refrain from doing something specified.'" (quoting *Derby Meadows Utility Co. v. Inter–Continental Real Estate*, 202 Ill. App. 3d 345, 361 (1990))). Indeed, the Seventh Circuit has explained that a promise of fact that refers to a current condition rather than some future action, such as that a property is "habitable and safe," is "more precisely described as a warranty than as a promise." *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) (quoting Restatement (Second) of Contracts § 2 cmt. d (1981).[12] Therefore, Count VIII is dismissed in its entirety.

## VII.  Damages

### A.  Request for Attorneys' Fees

Defendants argue that Plaintiffs' requests for attorneys' fees should be stricken from the Complaint since Plaintiffs are acting *pro se*. But Plaintiffs state they merely want to reserve their right to request attorneys' fees should they hire an attorney in the future and receive a favorable judgment. This is permissible, and it is premature

---

[11] In their response brief, Plaintiffs point to two new promises by Wheeler that they allegedly relied upon: promises of "joy and normal life," and that the property would be in move-in condition by June 10, 2021. But these promises were not mentioned in the Complaint. Plaintiffs cannot amend the Complaint by their response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

[12] And even if these were promises on which Plaintiffs could plead promissory estoppel, Plaintiffs have not pleaded reliance because Babu and Abraham's statements regarding the air and water quality were not made until after Aharon signed the lease.

to decide that Plaintiffs have no right to attorneys' fees at this early stage of the litigation.[13] What is not permissible, however, is requesting attorneys' fees for a claim absent an express statutory or contractual right. *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 115 N.E.3d 923, 927 (Ill. 2018) ("Illinois follows the 'American rule,' which prohibits prevailing parties from recovering their attorney fees from the losing party, absent express statutory or contractual provisions."). Here, the lease does not mention attorneys' fees. And the only claim which would provide Plaintiffs the statutory right to seek attorneys' fees is their claim in Count V, under the ICFA. Under the American rule, Plaintiffs' other common law claims cannot be the basis for attorneys' fees. Therefore, apart from Count V, Plaintiffs' requests for attorneys' fees are stricken (R. 8 ¶¶ 90, 115, 126, 142, 179, 195, 213).

### B. Request for Punitive Damages

Defendants also argue that Plaintiffs cannot seek punitive damages for their contract-based claims, and that their requests under these claims must be stricken. Under Illinois law, punitive damages may be awarded only "when 'torts are committed with fraud, actual malice . . . or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.'" *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2014) (quoting *Cirrincione v. Johnson*, 184 Ill.2d 109, 115–16 (1998)). However, "punitive damages are not

---

[13] The cases cited by Defendants, which denied requests for attorneys' fees to *pro se* parties, were all decided after judgment. *Krecioch v. United States*, 316 F.3d 684, 688 (7th Cir. 2003); *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 110 (1997); *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 115 N.E.3d 923, 927 (Ill. 2018).

available in actions for breach of contract" except "where the breach constitutes an independent tort." *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1131 (2004) (internal citations omitted).

Defendants ask the Court to strike Plaintiffs' punitive damages requests in Counts I (breach of contract), IV (implied warranty of habitability), and VIII (promissory estoppel) because they are contractual or quasi-contractual claims. However, Plaintiffs claim that the breaches themselves also constituted independent torts of gross negligence and fraud. The Court will thus not strike Plaintiffs' claims for punitive damages at this point in the litigation.

## CONCLUSION

For the foregoing reasons, Babu and Abraham's motion to dismiss [R. 26] Counts I–VI and IX is denied. The Court grants Babu and Abraham's motion to dismiss as to Counts VII and VIII, as well as any claim for negligence per se or ordinary negligence in Count II. The references to negligence per se in Count II's heading and in paragraph 103, as well as the requests for attorneys' fees in paragraphs 90, 115, 126, 142, 179, 195, 213 are also stricken. The Court grants Wheeler and Gill's motion to dismiss [R. 13] in full. If Plaintiffs believe they can amend the defects identified in the opinion, they may file a proposed amended complaint and redline showing the changes made, as well as a memorandum no greater than five pages explaining why the amended complaint cures the defects, on or before March 10. Otherwise, Abraham and Babu must answer the surviving claims

by March 17. The parties are further ordered to fulfill their Rule 26(f) obligations by March 17, and to include a proposed discovery schedule in their joint status report.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: February 24, 2023

27